## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT WICHITA, KANSAS

AMANDA CARTAGENA, individually, and
J.C., a minor, by and through her mother and
next friend, AMANDA CARTAGENA, and
JOSE CASTELO SALMERON,
                Plaintiffs,

-vs-                                    Case No.

JC LOGISTICS INTERNATIONAL, LLC,
a foreign limited liability company, and
MARCO TRUJILLO FLORES, an individual.

                Defendants.
_____

## COMPLAINT

       Plaintiffs Jose Castelo Salmeron and J.C., a minor, by and through her mother and next friend,

Amanda Cartagena, and their attorney of counsel, Tony L. Atterbury of the Bull Attorneys, P.A.; and

Amanda Cartagena, individually, by and through her attorney of counsel, Charles W. Hess of Hess

Law, LLC for their claims against and Defendants, allege and state:

### IDENTITY OF THE PARTIES

       1.     Plaintiff Jose Castelo Salmeron is a resident and citizen of the State of Kansas and

resides in Finney County, Kansas.

       2.     Plaintiff J.C., a minor is a resident and citizen of the State of Kansas and resides in

Finney County, Kansas.

       3.     Plaintiff Amanda Cartagena is a resident and citizen of the State of Kansas and resides

in Finney County, Kansas.

       4.     Defendant JC Logistics International, LLC, (hereinafter referred to as, "Logistics") is

a California limited liability company with its principal place of business located at 531 Alta RD #8

San Diego, CA 92154, San Diego, California, and may be served with process through its registered agent, Maria Jose Hagenah at 1359 West 9th Avenue #1500 Escondido, CA 92029.  Upon information and belief from the California Secretary of State's Office, the organizers and members of the LLC are residents and citizens outside of the State of Kansas.

5.      Marco Trujillo Flores (hereinafter "Driver") is an individual that is a citizen and resident of the State of California and may be served with process at his address of 4261 Nordica Street, San Diego, California 92113.

## JURISDICTION AND VENUE

6.      This Court has proper venue and jurisdiction over the persons and subject matter of this action.

7.      The collision giving rise to Plaintiffs' causes of action occurred in Ford County, Kansas, which is within this judicial district.  Thus, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

8.      Plaintiffs are citizens of the State of Kansas.  Upon information and belief, no Defendant is a citizen of the State of Kansas; nor is any member of Logistics a citizen of the State of Kansas.  Plaintiffs each assert claims against the Defendants for recovery of an amount in excess of $75,000, exclusive of interest and costs.  Thus, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## GENERAL ALLEGATIONS OF FACTS

9.      For all actions and omission in this case, Logistics was acting in the additional role of dispatcher in control of and in charge of the tractor-trailer and commercial motor vehicle involved in this case.

10.      Logistics and the Driver applied for authority to operate as a carrier under DOT

licensure and authority under DOT number 2793726.

11.     On or about December 15, 2021, Driver was driving a commercial motor vehicle ("CMV") owned by Logistics and was in the course and scope of employment such that the actions and omissions of the Driver are the actions and omissions of Logistics under the Doctrines of Vicarious Liability and Respondeat Superior.

12.     On or about December 15, 2021, Driver was negligently, recklessly and wantonly operating the commercial motor vehicle on US Highway 50 near Road 124 in Ford County, Kansas during extremely hazardous weather conditions that included wind with dust storm conditions that significantly impaired his ability to see ahead of him and made his vehicle unstable. This was contrary to the FMCSR. As a proximate result, Defendant Driver collided with the rear of the vehicle that Plaintiff Amanda Cartagena was operating and who Plaintiff Jose Salmeron Castelo and Plaintiff J.C., a minor, were passengers in, thereby proximately causing the accident and injuries and damages to the Plaintiffs.

13.     The impact and collision were so severe that the Plaintiffs' vehicle spun out of control and eventually came to rest several hundred yards from the highway after being completely destroyed. The CMV was also damaged so severely that it had to be towed from the scene.

14.     Instead of pulling over or not driving at all that day, Defendant Driver chose to drive in hazardous dust storm conditions negligently, recklessly, and wantonly.  He negligently, recklessly, and wantonly failed to stop and take his CMV out of service.  He failed to leave the traveled roadway as required by Federal Motor Carrier Safety Regulation ("FMCSR") 49 CFR 392.14.

15.     Despite being unable to see the road ahead, Defendant Driver, negligently, recklessly, and wantonly did not slow his CMV for the Plaintiffs' vehicle and impacted them at high speeds.

16.     The tractor-trailer being driven by Driver at the time of this collision was owned by

Logistics.

17.     Federal law requires motor carriers to obtain insurance to cover motor vehicle accidents. Federal regulations specifically require all interstate carriers to maintain insurance or another form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles" under the carrier's permit. 49 C.F.R. § 387.301(a); *see also id.* § 387.7. To satisfy this insurance requirement, the regulations require the attachment of a specific endorsement to each insurance policy of the carrier, the MCS-90 endorsement, which guarantees payment in the amount of at least $750,000.00 per accident. 49 C.F.R. §§ 387.7, 387.9.

18.     Upon information and belief, Defendants carry liability insurance with MCS-90 Endorsements.

19.     The Safer Measurement System ("SMS") statistics on the public database known as the Safter Web from the DOT provides clear and convincing evidence that the Defendants acted with negligent, reckless, and wanton disregard for public safety and for the FMCSAs and Compliance, Safety Accountability - Behavior Analysis and Safety Improvement Categories ("CSA BASICs"). The Company Snapshot taken from this database and attached as **Exhibit A** indicates that the motor carrier has 33 drivers and 31 power units. The same document indicates the company had 3 recordable crashes in the past 24 months. The violation history indicates a substantial number of violations for Unsafe Driving, Hours of a Service and Vehicle Maintenance. Other violations shown by this exhibit confirm Dangerous Driving violations, speeding, brakes, and a host of other CSA BASICs which establishes that the motor carrier has a business pattern and routine violations of the FMCSRs and CSA BASICs.

20.     At all times relevant herein significant weather warnings concerning Kansas and

the region of Kansas where these crashes occurred that had been issued for the trucking industry and all professional drivers of commercial motor vehicles warning them not to drive on December 15, 2021. The warnings began the day before the day of these crashes occurred.  These warnings were reported by KSN, KSN.com, KWCH.com as well as the Topeka Capital Journal. See **Exhibit B** and screenshots below.

NEWS

# High wind warning issued for Wednesday across Kansas. Gusts may hit 70 mph with record high temperatures.



**Tim Hrenchir**
Topeka Capital-Journal

Published 9:24 a.m. CT Dec. 14, 2021 | **Updated 2:19 p.m. CT Dec. 14, 2021**



**"Wednesday**

Power outages and damage possible from gusts of 60 mph


High wind warning for Wednesday (KWCH)

By: Ross Janssen
*Published: Dec. 14, 2021 at 4:27 PM CST"*

21.    Despite the readily available reports of dangerous wind conditions meeting or exceeding 70 mph Defendant Logistics negligently, recklessly, and wantonly dispatched Defendant Driver into the widely reported and foreseeable severe wind conditions that are known to cause blinding dust storms across Kansas.

22.    Defendant Driver was never instructed by dispatch that he should cease operations as required under 49 C.F.R. § 392.14 which states, "*if conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated.*"

23.    Defendant Driver is presumably a professionally trained expert truck driver who knew or reasonably should have known that the forecast of high wind conditions at 70 mph and above made it highly foreseeable that dust, wind, and visibility conditions would make the entire day of December 15th, 2021, too hazardous to professionally operate CMVs in.

24.    Defendant Logistics' conduct was negligent, reckless, and wanton because it failed to require that Defendant Driver stop driving in extreme, dangerous wind conditions and failed to

require him to cease operations per 49 C.F.R. § 392.14 thereby, proximately causing the collision and the resulting injuries and damages suffered by the Plaintiffs.

25.     Defendant Logistics negligently, recklessly, and wantonly used "Forced Coercion" which is Prohibited by Federal law and by bulletins promulgated by the FMCSA to force Defendant Driver to his CMV in violation of the FMCSR and specifically in violation of 49 C.F.R. § 392.14. which is prohibited in the FMCSR under the Final Rule issued by the FMCSA under Docket No. FMCSA - 2012-0377 RIN 2126-AB57 (2015) entitled "Prohibiting Coercion of Commercial Motor Vehicle Drivers." This rule arose from the FMCSA adopting regulations that prohibit motor carriers, shippers, receivers, or transportation intermediaries from coercing drivers to operate CMVs in violation of certain provisions of the Federal Motor Carrier Safety Regulations. Upon information and belief, Defendant Logistics, expressly or impliedly threatened Defendant Driver with the loss of pay, suspension, or termination if he did not violate the FMCSR and drive in known hazardous and dangerous high wind and dust conditions. (See attached **Exhibit C** Rule issued Prohibiting Coercion of Commercial Motor Vehicle Drivers.)

26.     The trucking industry has online publications to warn truck drivers about forced dispatch during High Wind driving conditions. The article **Storm Safety Tip for Over the Road Truck Drivers | Non-Forced Dispatch** warns truck drivers about the extreme dangers of driving in high winds, straight-line winds, and dust storms. See attached **Exhibit D** and refer to nonforceddispatch.com/storm-safety-tips-road-truck-drivers and see screenshots below.

We operate everyday with many safety concerns; such as speed limits, load weight, hours of service, and freezing and slick driving conditions. Heavy rain, high winds, straight-line winds, winter storms, dust storms, blizzards and severe weather are also safety concerns. Regardless of the type of weather, driving in harsh conditions can increase the risk of dangerous situations for you and other drivers on the road.



All drivers need complete concentration and have their undivided attention to navigate through the weather. To arm yourself against mother nature, the best tip is to stay on top of the weather conditions on your route. Look up weather conditions on weather websites; local radio and television stations are a great place to start.

## Driving in heavy winds

Most truck drivers do not think about wind being a big issue when driving. However, driving in high winds can be quite dangerous especially in open spaces, highway overpasses, through mountains, and tunnels. Often these areas act as wind tunnels.

You are a big rig, so you know how difficult it can be to stay in your lane during strong winds. Keep in mind other rigs are probably fighting the same battle. Be prepared. Always keep both hands on the steering wheel in case a wind gust tries to push you out of your lane.

27.     J.J. Keller & Associates, Inc. publishes driver training guides for the entire trucking industry to educate drivers of the risk and danger of operating commercial motor vehicles (CMV) in high wind, dust, and bad weather conditions. The **Driver Training Series, Extreme Weather Driving** is attached as **Exhibit E** is attached and screenshots are set forth below. Defendant Logistic acted negligently, recklessly, and wantonly by failing to utilize instructional training materials and industry training guides to teach Defendant Driver on how to "understand the basic driving techniques that will help them safely operate a CMV when driving in extreme weather. Specifically, it covers the dangers associated with fog, rain, **wind,** snow, and ice and how to maintain control of a tractor-trailer when traction is reduced and visibility is limited due to weather conditions (emphasis added)." Upon information and belief Defendant Logistics negligently,

recklessly, and wantonly failed to properly train Defendant Driver the safe driving rule that winds may create dangerous instability and in dangerously high winds, truck drivers should find a safe place to pull over until conditions improve.

Winds that are manageable with a fully-loaded trailer may create dangerous instability with an empty trailer or lighter load. In dangerously high winds, find a safe place to pull over until conditions improve.

(**Exhibit E**).

28.     This was a preventable crash and could have been avoided. This crash would not have occurred but for the lack of appropriate formal truck driver training and supervision which would have made both the dispatchers and the drivers recognize that the high wind warnings meant the wind conditions were too severe for all CMVs to be operating that day, and they were violating the industry standard of care by continuing to drive in high weather conditions. Defendant Driver should have been instructed by dispatch not to drive at all on the date of accident

## COUNT I - THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS SET FORTH THE APPLICABLE MINIMUM INDUSTRY STANDARDS OF CARE TO ESTABLISH NEGLIGENT, RECKLESS, AND WANTON CONDUCT, DIRECT NEGLIGENCE AND WANTON CONDUCT AS WELL AS RESPONDEAT SUPERIOR RESPONSIBILITY

29.     Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

30.     The FMCSRs are located at 49 C.F.R. § 390 *et seq.*  The FMCSRs and the Motor Carrier Act of 1980 ("MCA") specifically operate under the section 40 C.F.R. § 391.1(a) and (b), which states "(a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers. The rules in this part **also establish minimum duties of motor carriers with respect to the qualification of drivers.** (b) A motor carrier who employs himself/herself as a driver must comply with both the rules in this part that apply to

motor carriers and the rules in this part that apply to drivers." The FMCSRs set forth the applicable minimum industry standard of care including the minimum qualifications for drivers and the minimum duties for drivers under 49 C.F.R. § 391.1(a) & (b).

31.     The allegations contained in this Complaint regarding the FMCSRs are set forth to establish that the Defendants did not comply with the industry standard of care and the minimum standards of care described under the FMCSR and the interpretive categories under the CSA BASICs to establish the negligent and wanton conduct of the Defendants and are not brought to allege a private cause of action for violation of the FMCSR.

32.     The FMCSR define "motor carrier" as a for-hire motor carrier or a private motor carrier.  The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories."  49 C.R.F. § 390.5.

33.     The FMCSA's website provides guidance on who is a "motor carrier":

> A motor carrier is defined in 49 CFR 390.5 as a for-hire motor carrier or a private motor carrier. The term includes a motor carrier's agents, officers and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories. As long as the parent corporation does not engage in the transportation of goods or passengers for compensation (i.e., exercising daily control over drivers and equipment; and, in the case of a for-hire motor carrier, soliciting customers, and billing and collecting freight charges), it would not be considered a motor carrier. The exercise of managerial control by the parent corporation by establishing operational policies and procedures, or through other forms of general oversight, does not, in and of itself, make it a motor carrier under FMCSA regulations.

https://www.fmcsa.dot.gov/regulations/title49/section/390.5.

34.     The FMCSR define "employer" in part as "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business,

or assigns employees to operate it."  49 C.F.R. § 390.5.

35.    The MCA defines "broker" in part as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).

36.    The MCA defines "Individual Shipper" as "any person who —

(A) is the shipper, consignor, or consignee of a household goods shipment;

(B) is identified as the shipper, consignor, or consignee on the face of the bill of lading;

(C) owns the goods being transported; and

(D) pays his or her own tariff transportation charges."

49 U.S.C. § 13102(13).

37.    The MCA defines "control" as "when referring to a relationship between persons, includes actual control, legal control, and the power to exercise control, through or by—

(A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or

(B) any other means."

49 U.S.C. § 13102(5).

38.    The FMCSRs require that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.  49 C.F.R. § 390.3(e)(1) and (2).

39.    The FMCSRs provide that "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher

standard of care than that law, ordinance or regulation, the [FMCSA] regulation must be complied with." 49 C.F.R. § 392.2.

40.     The MCA provides that "A carrier . . . is liable for damages sustained by a person as a result of an action or omission of that carrier. . . in violation of this part." 49 U.S.C. § 14704(a)(2).

41.     The MCA provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." 49 U.S.C. § 14101(a).

42.     Defendant Logistics was at all material times acting as a "motor carrier" and an "employer" of Defendant Driver.

43.     Defendants negligently, recklessly, and wantonly failed to provide safe and adequate service which proximately caused the injury and damages to the Plaintiffs.

44.     The actions and/or omissions of Defendant Driver are the actions and/or omissions of Logistics under the doctrines of Respondeat Superior and Vicarious Liability and upon information and belief, are negligent and wanton and proximately caused this accident as well as injuries and damages to the Plaintiffs including, but are not limited to the following:

A.     Failure to require the drivers to cease operations due to forecast high winds on the date of the accident;

B.     Following too closely;

C.     Driving too fast for then existing traffic conditions;

D.     Operation of a CMV in a state of faulty maintenance with bad brakes;

E.     Failure to use reasonable and ordinary care in the operation of the tractor-trailer;

F.     Inattentive operation of a commercial motor vehicle;

F.     Operation of a commercial motor vehicle while using a cellular phone, GPS, PDA, CB radio, mapping or other message device;

G.      Failing to keep a proper lookout;

H.      Failing to warn;

I.      Failure to take evasive action;

J.      Operation of a CMV without first ascertaining that movement can be safely made;

K.      Failure to operate the commercial motor vehicle with reasonable care to keep the CMV under control and drive only within the driver's range of vision;

L.      Failure to learn, observe, and follow distance and cushion rules for a commercial motor vehicle to avoid contact with other motor vehicles in the area;

M.      Speeding too fast for then existing weather conditions;

N.      Upon information and belief, failing to maintain copies of the Defendant Driver's logs and intentionally destroying them or concealing them in an effort to hide violations of the hours-of-service rules and the fatigue of Defendant Driver;

O.      Upon information and belief, failing to comply with the requirements and recommendations of the DOT and FMCSA regarding using the following safety protocols: Failing to perform post-accident investigations; failing to set up and utilize a Safety Review Board; failing to train drivers in defensive driving, hazard perception, and accident awareness techniques;

P.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. §§ 381 through 399;

Q.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R § 383.110, 49 C.F.R. § 383.11, 49 C.F.R. 383.113 by failing to have adequate safety management controls in place that would require and provide that the truck driver, Motor Carrier and/or Broker had the required skills and safety management

controls required under these regulations;

R.    Upon information and belief, Defendant Logistics failed to meet the minimum duties and industry standards of care set forth under Form OP-1 which is the "Application for Motor Property Carrier and Broker Authority" which arises from OMB 2126-0016. This form requires under paragraph 30., "**APPLICANTS SUBJECT TO FEDERAL MOTOR CARRIER SAFETY REGULATIONS**. *If you will operate vehicles of more than 10,000 pounds GVWR and are, thus, subject to pertinent portions of the USDOT's Federal Motor Carrier Safety Regulations (FMCSRs) at 49 CFR, Chapter 3, Subchapter B (Parts 350-399), you must certify as follows:* Applicant has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial vehicles and the safe transportation of hazardous materials, and will comply with these regulations. In so certifying, applicant is verifying that, at a minimum, it:

1) Has in place a system and an individual responsible for ensuring overall compliance with FMCSRs.

2) Can produce a copy of the FMCSRs and the Hazardous Materials Transportation Regulations.

3) Has in place a driver safety training/orientation program.

4) Has prepared and maintains an accident register (49 CFR 390.15).

5) Is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR 391).

6) Has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers'

hours of service and vehicle inspection, repair, and maintenance (49 CFR 392, 395, and 396).

7) Is familiar with, and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances testing requirements (49 CFR 382 and 40)." (See **Exhibit F**, Form OP-1).

S.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by operation of a commercial motor vehicle while a driver's ability or alertness is impaired;

T.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11(a) which requires that a person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.

U.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.14 which requires that drivers and motor carriers exercise when:

Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. **If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. . .**

V.      Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110, which requires all drivers have the knowledge and skills

necessary to operate a CMV safely.

W.    Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a fleet vehicle and commercial motor vehicle when the Driver does not possess and demonstrate the safe driving skills required by this regulation;

X.    Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110 and § 383.111 by operating a fleet vehicle and commercial motor vehicle when the Driver did not have sufficient basic knowledge of safe operating regulations, without the "Required Knowledge" on safe operations regulations, safe vehicle control systems, CMV safety control systems, basic control, shifting, backing, visual search, communications, speed management, space management, night operations, extreme driving conditions, hazard perception, emergency maneuvers, skid control and recovery, relationship of cargo to vehicle control, vehicle inspections, hazardous materials, mountain driving, fatigue and awareness, air brakes, and combination vehicles such that the motor carrier and their driver can operate the vehicle safely;

Y.    Failing to meet the minimum duties and industry standards set forth under 49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

Z.    Failing to have dispatchers who are trained in recognizing hazardous weather, wind, storm, and dust conditions who will order drivers to cease operations when hazardous conditions exist.

AA.    Upon information and belief, failing to meet and follow the maximum hours-of-services limits prescribed by law under 49 C.F.R. 395.1 et. seq;

BB.     Upon information and belief, failing to maintain copies of the Driver's logs in their accurate and complete unaltered manner as required by 49 C.F.R. 395.3 et. seq.;

CC.     Upon information and belief, using a cellular phone device, wireless communication device or other PDA device while operating a motor vehicle and talking, texting or looking at GPS directions, thereby violating K.S.A. 8-15,111 causing the Defendant Driver to be distracted;

DD.     For violation of laws, statutes, ordinances and regulations of the State of Kansas and the United States; and

EE.     For other actions and/or omissions that will be supplemented after the receipt of full and complete discovery in this case.

## COUNT II - NEGLIGENT SELECTION, HIRING, TRAINING, SUPERVISION AND RETENTION

45.     Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

46.     Upon information and belief, Defendant Logistics negligently selected, hired, trained, and supervised its Defendant Driver.

47.     Defendant Logistics was negligent and wanton in its selection of Defendant Driver because it was hiring an unfit and incompetent driver and/or motor carrier to do work which involves a risk of physical harm to others unless skillfully and carefully done which is the proximate cause of the accident and injuries and damages to the Plaintiffs.

48.     The evidence set forth in the General Allegations of Fact establishes that Defendant Logistics did not train their hiring and training personnel with appropriate sufficient knowledge and skill to train drivers on how to understand Part 392.14 about not driving in hazardous conditions like wind, storms, dust, and other severe weather conditions.

17

49.     Defendant Logistics, did not train their drivers to recognize and understand that it is hazardous to drive in high winds and to follow the FMCSR which requires carriers and drivers to recognize when conditions have become so dangerous that it is unsafe to continue driving and to cease operations.

50.     Upon information and belief, Defendant Driver had not been trained through proper orientation and ongoing driver training to have and understand the 20 Required Driving Skills that all professional truck drivers must understand and obey to be properly trained and qualified to driver tractor-trailers.

51.     Upon information and belief, Defendant Logistics was negligent and wanton by the following:

A.      Did not establish a normal policy and protocol for vetting and selecting drivers;

B.      Did not vet the drivers to establish that they were competent, skillful and safe;

C.      Did not employ any outside services to conduct investigation into the backgrounds of the drivers;

D.      Did not establish written policies and procedures for the vetting of drivers;

E.      Did not keep an electronic and tangible file with records on the drivers;

F.      Did not establish written contracts with the drivers and motor carriers to dictate and control who would be responsible for safety compliance following the FMCSR and CSA BASICs mandates;

G.      Did nothing to find out if the drivers or motor carriers were knowledgeable with Safe/Stat/CSA/SMS scores;

H.      Did not discuss safety, safety programs or safety expectations with the chosen;

I.      Did not do anything to assure the motoring public and the Plaintiff that they were hiring safe drivers;

52.     Upon information and belief, all allegations set forth above in prior paragraphs establish that all Defendants are negligent, wanton, and reckless as set forth above and for the following actions and/or omissions and the actions and omissions of both Defendants which proximately caused this accident and injuries and damages to the Plaintiffs.

53.     Upon information and belief, Defendant Logistics acted negligently and wantonly in its hiring of Defendant Driver for failing to meet the minimum duties and industry standards of care set forth under the requirements of Form OP-1 and 49 C.F.R. § 391.11 and 49 C.F.R. § 391.21, 49 C.F.R. § 391.23 by failing to properly qualify Defendant Driver and by failing to make appropriate investigation and/or inquiries of Defendant Driver's background in the prior ten (10) year period and by failing to obtain the federally required information on the application for employment and by failing to follow up with employment verification. Further, by failing to conduct background checks, criminal history checks, and obtaining actual responses from prior employers. Further, for failing to investigate whether the Defendant Driver knew and was trained on the 20 Required Driver Skills under the FMCSR as set forth in preceding paragraphs.

54.     Upon information and belief, Defendant Logistics was negligent and acted wantonly in their selection, hiring and use of Defendant Driver because they did not implement a driver orientation program or an ongoing training program; did not select a motor carrier and driver that had any Safety Review Board; did not train their drivers with defensive driver training, accident avoidance training, and hazard perception and recognition techniques and other safe driving techniques; by not

following 49 C.F.R. § 383.111 by failing to properly road test Defendant Driver as to her knowledge of following distance, cushion and space management techniques, hazard perception techniques, braking techniques, visual search techniques and fatigue and awareness; and/or for creating, implementing and requiring Defendant Driver and the other drivers to follow an on-time delivery schedule under the threat of penalty including loss of pay, suspension or termination.

55.     The wrongful actions and/or omissions of Defendants Logistics establish wanton and negligent selection, hiring, retention, supervision, and training of Defendant Driver including supervisors over their drivers inclusive of hiring and training personnel, dispatch officers, safety directors, maintenance directors and operations directors who did not safely or adequately select, hire, train or supervise their drivers and other employees and personnel.

56.     Defendant Logistics knew or reasonably should have known that they were hiring an unfit and incompetent driver. Defendant Logistics knew or reasonably should have known that their selection and hiring of Defendant Driver created an undue risk of harm to Plaintiffs, and negligently and wantonly failed to reprimand, retrain, or terminate Defendant Driver following this accident, and by failing to perform a post-accident investigation to study preventability and to prevent future accidents and injuries.

57.     Defendant Logistics' negligent and wanton selection, hiring, training, monitoring, supervision, and retention of unsafe and incompetent employees, agents, and independent contractors, including Defendant Driver and his supervisory personnel, proximately caused the injuries to Plaintiffs.

58.     Defendant Logistics failed to have adequate safety management protocols in place.

59.     Defendant Logistics failed to properly create and implement a proper safety program that would require their drivers and supervisory personnel in written form to determine that they have

appropriate safety skills, sufficient knowledge of defensive driving skills, sufficient knowledge of hiring and training skills, and sufficient knowledge of maintenance and repair skills such that they would have sufficient knowledge to ensure that the drivers and supervisory personnel and managers follow industry required standards of care by following Federal and State regulations and laws over motor carriers who have DOT authority to operate.

## COUNT III - NEGLIGENT ENTRUSTMENT

60.     Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

61.     Defendant Logistics knew or had reasonable cause to know that providing a tractor-trailer to Defendant Driver was entrusting a tractor-trailer to an unfit and incompetent driver who was not properly trained and had insufficient Driver Skills Knowledge to operate the CMV safely.

62.     Defendant Logistics knowingly entrusted, lent, permitted, furnished, or supplied the tractor-trailer involved in this accident to an unfit and incompetent allegedly professional truck driver.

63.     Defendant Logistics is liable for negligent entrustment of the tractor-trailer to Driver under the doctrine of law from the Restatement (Second) of Torts § 390 that states,

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely . . . to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

64.     Defendant Logistics violated the duty "not to give control of a dangerous instrumentality to a person who is incapable of handling or using it carefully."

65.     Defendant Logistics, as entrustor, has a superior right to control or possession of the tractor-trailer.  Defendant Logistics violated a duty to not give control of a dangerous instrumentality to a person (Defendant Driver) who was incapable of handling or using it carefully which proximately caused this accident and injuries and damages to the Plaintiffs.

## COUNT IV - RATIFICATION IS ESTABLISHED BY EXPRESS OR IMPLIED RATIFICATION

66.     Plaintiffs incorporates by reference all preceding allegations in this Complaint, as if they were repeated herein.

67.     Defendant Logistics has ratified all conduct of Defendant Driver either expressly or impliedly.   Upon information and belief, Defendant Driver was not reprimanded, suspended, terminated, or retrained following the subject collision.   More importantly, the FMCSR and CSA BASICs violations set forth above clearly establish that Smith Trucking expressly disregarded the FMCSR, the CSA BASICs, and the industry standards of care for safety in the trucking industry or impliedly turned a blind eye to safety. Further, Defendant Driver did not follow its oath under the Form OP-1 to comply with safety as required in order to obtain their DOT authority and license to operate.

## COUNT V – PLAINTIFFS' ACTUAL AND COMPENSATORY DAMAGES

68.     Plaintiffs incorporate by reference all preceding allegations in this Complaint, as if they were repeated herein.

69.     As a further direct and proximate result of the negligent and wanton actions and omissions of the Defendants, as aforesaid, Plaintiff J.C., a minor, has received injuries to her body, including, but not limited to:

A.      UNSF fracture of the left femur;

B.      Head injury;

C.      Contusion of lung;

D.      Traumatic Pneumothorax;

E.      Contusion of the heart;

F.      Displaced fracture of the right clavicle;

G.      Fracture of the unspecified clavicle;

H.      Arrythmia for cardiac contusion;

I.      Left femur fracture;

J.      Bilateral clavicle fractures;

K.      Facial fractures including L orbital herniation of fat pad and B zygoma;

L.      Rib fractures;

M.      Left knee injury;

N.      Injury to left wrist.

Plaintiff J.C., a minor suffered severe injuries, has undergone significant treatment including surgery and remains in treatment for her head and other injuries.  She may have had aggravation to a pre-existing condition, and was otherwise injured. The Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability.  In the future, the Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

70.      As a further direct and proximate result of the negligent and wanton actions and omissions of the Defendants, as aforesaid, Plaintiff Jose Castelo Salmeron has received injuries to his body, including, but not limited to his head, scalp, pleural effusion, lower abdominal, cervical spine and right shoulder. He may have had aggravation to a pre-existing condition, and was otherwise injured. The Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability.  In the future, the Plaintiff will suffer with pain and suffering, mental anguish, loss of time,

loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

71.     Plaintiff Jose Castelo Salmeron additionally brings claims for the loss of consortium suffered by his spouse.

72.     As a further direct and proximate result of the negligent and wanton actions and omissions of the Defendants, as aforesaid, Plaintiff Amanda Cartagena has received injuries to her body, including, but not limited to her back, neck, right upper extremity, left upper extremity, abdomen and chest. Plaintiff suffered severe injuries, has undergone significant treatment for her head injuries.  She may have had aggravation to a pre-existing condition, and was otherwise injured. The Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability.  In the future, the Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of Seventy-five Thousand Dollars ($75,000.00).

73.     Plaintiff Amanda Cartagena additionally brings claims for the loss of consortium suffered by her spouse.

WHEREFORE, Plaintiffs each pray for judgment against Defendants for all damages allowed under Kansas law as actual compensatory damages in an amount in excess of Seventy-five Thousand Dollars ($75,000.00); for costs herein, for interest where allowed, and for such other and further relief as the Court deems just and equitable.

/s/ Tony L. Atterbury
Tony L. Atterbury, #20314
**BULL ATTORNEYS, P.A.**
10111 E. 21st Street, Suite 204
Wichita, Kansas 67206
316-684-4400/Fax: 316-684-4405
tony@bullattorneys.com
*Attorney for Plaintiffs Jose Castelo Salmeron*
*and J.C., a minor by and through her mother*
*and next friend, Amanda Cartagena*


/s/ Charles W. Hess
Charles W. Hess, #12777
121 S. Whittier St.
Wichita, Kansas 67207
316-263-4933
chuck@hesslawllc.com
*Attorney for Plaintiff Amanda Cartagena*


## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

Plaintiffs demand a pretrial conference and a trial by jury in this matter.

## DESIGNATION FOR PLACE OF TRIAL

Plaintiffs designate Wichita, Kansas as the place for trial in this matter.


/s/ Tony L. Atterbury
Tony L. Atterbury, #20314

/s/ Charles W. Hess
Charles W. Hess, #12777